UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HERMAN L. GRAVOLET               CIVIL ACTION

VERSUS                         NO. 08-3646

JENNIFER DAIGLE TASSIN, ET AL     SECTION "C" (3)

<u>ORDER AND REASONS</u>

This matter comes before the Court on motion for summary judgment and motion to strike filed by the remaining defendants, Jennifer Daigle Tassin ("Tassin"), Sheriff Irvin Fritz  Hingle ("Hingle"), Randy Linder ("Linder"), Steve Lambert ("Lambert") and Charles Guey ("Guey").   Having considered the record, the memoranda of counsel and the law, the Court finds summary judgment is appropriate for the following reasons.

The plaintiff, Herman Gravolet ("Gravolet") filed this suit on June 5, 2008, seeking damages under 42 U.S.C. § 1983, for wrongful arrest and seizure, and related state law claims for malicious prosecution, false imprisonment, abuse of process, conversion, libel, slander and defamation of character.  (Rec. Doc. 1).   The defendant Hingle and Guey are sued for respondeat superior, failure to adequately train and

1

conspiracy.  (Rec. Docs. 1, 27).   Gravolet's claims center on the propriety of a June 10, 2008, arrest for stalking under La. Rev. Stat. § 14:40.2., which followed his May 26, 2007, arrest for driving while intoxicated.[1]

Tassin was involved in both arrests and is the subject of the stalking charge. With regard to Gravolet's arrest for driving while intoxicated in May 2007, the plaintiff was violent and angry throughout that arrest and booking process  and specifically asked questions about Tassin during booking.[2]   Gravolet admits that he thereafter decided to videotape Tassin from his vehicle while she was on duty on at least three occasions thereafter on June 8-10, 2007, the last time just prior to his arrest.[3]  (Rec. Doc.

---

[1]     The latter charge was resolved when Gravolet plead guilty to the charge of failure to submit to chemical test on February 26, 2008.  (Rec. Doc. 48, Exh. 4).  The charge of stalking was nolle prossed on May 6, 2008.   (Rec. Doc. 58, Exh. 15).

[2]     The defendant's conduct was recorded on tape at the police station.  The plaintiff also seeks the exclusion the booking video tape at trial with the argument that it is irrelevant.   Throughout the briefs, the plaintiff through counsel condones the violence with the argument that the violence was justified.   See e.g. Rec. Doc. 58, Exh. 2; 123).   The plaintiff is more candid in admitting that he was "incensed" by the conduct of the officers involved in his driving while intoxicated arrest, and wanted to "document a pattern of abusive behavior which would help in my DWI defense ..."  (Rec. Doc. 58, Exh. 2).

[3]     On one of those occasions, Gravolet admits that he refers to Tassin on tape as "little girl."  His mother, who represents him as co-counsel in this matter, was in the car at the time.

58, Exhs. 2, 18; ).   Tassin testified at deposition and in conjunction with her petition for

a temporary restraining order that she became fearful because of Gravolet's violent

behavior during the first arrest for driving while intoxicated, when combined with his

questions about her during booking and his subsequent appearances during her

working hours, all of which caused her to speak to superiors about her concerns prior to

Gravolet's second arrest for stalking.   She testified that the plaintiff was obsessed with

his May 2007 arrest for driving while intoxicated, that she feared retaliation, that she

feared he may follow her home off-duty or otherwise determine where she lived.  (Rec.

Docs. 48, Exh. 1; 58, Exhs. 12, 17, 20).

        The other defendants  involved in the stalking arrest were aware of Gravolet's

capability for violence because of his conduct at the May 2007 booking.   After

consulting the relevant statute, Guey gave instructions to arrest Gravolet for stalking if

he continued to follow Tassin.[4]   On the night of his arrest for stalking, the plaintiff

videotaped  Tassin at a traffic stop, and drove while being followed by Tassin in a

marked vehicle to a closed unlit golf course where he was arrested by Linder and

---

        [4]        Tassin sought and obtained a temporary restraining order against
Gravolet on June 12, 2007, ordering Gravolet not to abuse, harass or stalk Tassin, and
that the temporary restraining order was dissolved on June 25, 2007.  (Rec. Docs. 48,
Exhs. 9-10); 58, Exh. 17).

driven to the Belle Chasse lock up by Lambert.

In this motion, the defendants Tassin, Lambert,, Linder and Guey seek qualified immunity from the plaintiff's claims and dismissal of all official capacity and state law claims, and Hingle seeks dismissal of the plaintiff's claims based on respondeat superior and improper training.

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid*, 784 F.2d at 578. The Court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir.1989)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or

designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459 1462 (5th Cir.1995)(citing *Celotex*, 477 U.S. at 322-24 and Fed.R.Civ.P. 56(e)). The non-moving party may submit affidavits or other evidence to rebut with specific facts the movant's supported assertion of the absence of a genuine issue of material fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In order to create a jury question on an issue, "there must be a dispute in the substantial evidence, that is, evidence which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Chaney v. New Orleans Pub. Facility Management*, 179 F.3d 164, 167 (5th Cir.1999).

**QUALIFIED IMMUNITY**

The plaintiff has the burden to negate the assertion of qualified immunity once it is raised. *Collier v. Montgomery*, __ F.3d __, 2009 WL 1393748 (5th Cir.).

> In *Saucier v. Katz,* the Supreme Court held that a court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation before determining "whether [the officers] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. In *Pearson v. Callahan*, the Supreme Court has since held that this sequential two-step analysis was no longer mandatory. Instead, lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be applied first in light of the circumstances at hand." The Court noted,

however, that the *Saucier* formulation often is the appropriate analytical sequence.

*Id. at *2.*

An officer is entitled to qualified immunity with regard to §1983 false arrest claims "if a reasonable officer in his position would have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [plaintiff] had committed or was committing a crime." *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004). For qualified immunity purposes, an arrestee bears the burden of showing that the arresting officer lacked probable cause to arrest him and that the legality of the conduct was clearly established. "A mistake reasonably made as to probable cause justifies qualified immunity." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008). There must not even arguably be probable cause for the arrest for immunity to be lost. *Haggerty*, 391 F.3d at 656. Qualified immunity protects mistaken judgments and "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 343 (1986); *Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir. 2000).

The Court finds that the plaintiff has failed to negate the assertion of qualified immunity. At the time of the arrest, a reasonable officer could have found by a fair probability standard that Gravolet was stalking Tassin, as that term is used in La. Rev.

Stat. § 14:40.2.[5]  Tassin testified that she was fearful for her safety, and the Court finds that this fear was also reasonable for purposes of probable cause.  The fact that the stalking occurred when on duty is not determinative of the issue presented, nor is the plaintiff's argument that he has a constitutional right to videotape a police officer on duty.  Even assuming that the plaintiff had the "clearly established right" to videotape Tassin while on duty, that right does not render the stalking statute inapplicable nor does a video camera immunize the plaintiff from such a charge.[6]  The plaintiff was not arrested for

---

[5]     Under the statute:
A. Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer distress.  Stalking shall include, but not be limited to, the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed ,or to suffer emotional distress as a result of verbal or behaviorly implied threats of death, bodily injury, sexual assault, kidnaping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.
The term "pattern of conduct" does not appear in the statute except in the definitional Section 14:40.2 C.  The plaintiff repeatedly emphasizes the definition of "pattern of conduct" in his memoranda.

[6]     The Court notes that summary judgment would also be available if there was probable cause that the plaintiff committed any other crime at the time.  *O'Dwyer v. Nelson*, 2009 WL 412462 (5th Cir. 2009).  Inherent safety violations might be involved in the activity of simultaneously driving and videotaping.  See also, *Collier, supra.*

videotaping an officer on duty, he was arrested for stalking an officer on duty.[7]

The caselaw upon which the plaintiff relies does nor hold otherwise. See *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Robinson v. Fetterman*, 378 F.Supp.2d 534 (E.D.Pa. 2005). The court in *Smith* recognized "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph police conduct," but that the plaintiffs did not show that the defendants violated that right. *Id.*, 212 F.2d at 1333. In *Robinson*, the plaintiff was arrested for harassment while located on private property videotaping truck inspections without interference. That plaintiff followed no one in his vehicle. Compare *Liberty & Prosperity 1776, Inc. v. Corzine*, 2009 WL 537049 (D.N.J.).

More significant, perhaps, is the opinion in *Kelly v. Borough of Carlisle*, 2009 WL 1230309 (M.D.Pa.). In that case, the plaintiff brought a Section 1983 action challenging his arrest for Wiretapping and Electronic Surveillance Control Act because of his use of a video camera during a traffic stop, based on the advice of an assistant district attorney. That court specifically held "First, it was, and still is, unclear whether Plaintiff had a First Amendment right to videotape the police stop at all," and acknowledged that the Third

---

[7] Any official capacity claims against these defendants is subject to dismissal as redundant of the state law claims against these defendants. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). The plaintiff does not appear to contest this issue, although the Court does not understand the exact nature of the plaintiff's argument. (Rec. Doc. 58, p. 23).

Circuit has not recognized such a right, although "there is some First Amendment protection for videography that has a communicative or expressive purpose." *Id., at *8.* That court also distinguished *Robinson* as a "retaliation" claim. The Court need not address the attendant issue whether the plaintiff was using his videotape in a manner so as to threaten Tassin, as opposed to a use that could be recognized under the First Amendment.[8]

Given the uncertainty in the caselaw and the lack of guidance from the Fifth Circuit, this Court is unable to find as a matter of law that there was a "clearly established right to videotape police officers" at the time of the arrest under these circumstances. In addition, given the plaintiff's undisputed capability for violence and use of threatening language as evidenced during the May 2007 arrest for driving while intoxicated, the Court secondarily finds not only that a reasonable officer could have believed that his conduct was lawful under clearly established law and the information possessed by the arresting officers, but that there existed probable cause to arrest the plaintiff for stalking.[9] The

---

[8] The plaintiff in opposition argues that a provision of the Plaquemines Parish Sheriff Office's Policies and Procedures Manual regarding "Media Relations" was altered by the defendants. The plaintiff's argument is not well-supported or relevant, since there is no evidence that the plaintiff was a member of the media at any relevant time. (Rec. Doc. 58), pp. 16 -19).

[9] Any conspiracy claim also fails.

defendants Tassin, Linder, Lambert and Guey are entitled to qualified immunity with regard to the plaintiff's June 2007 arrest for stalking.[10]

**SUPERVISORY LIABILITY/FAILURE TO TRAIN**

The plaintiff has provided no proof that Hingle was personally involved in the June 2007 for driving while intoxicated arrest of the plaintiff, and he is otherwise not subject to liability under any theory of vicarious liability. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). Gravolet's claims against Hingle also focus on his alleged failure to properly train, which requires a showing that (1) Hingle failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport*, 397 F.3d 287, 291-192 (5th Cir. 2005). The defendants have provided affirmative proof of the training received by each individual defendant Tassin, Linder and Lambert. The plaintiff argues that "key discovery battles have not yet been resolved" relative to an alleged "pattern or practice of constitutional violations." (Rec. Doc. 58, p.

_____

[10] The plaintiff apparently concedes that he did not own the police radio, Assumption Parish commission or badge for purposes of his claim that these items were wrongfully seized and should have been returned. The plaintiff does not appear to address this issue in his opposition and, in any event, submits insufficient proof that any papers or a handicapped identification card were seized at all for purposes of summary judgment.

21).   The plaintiff supplements his opposition with documentation relative to unrelated disciplinary actions against Tassin, which the Court deems irrelevant to the issues presented here and insufficient to avoid summary judgment.   In any event, the plaintiff appears to base his argument on the need for additional training regarding the alleged First Amendment right to videotape police on duty, which the Court has previously discussed in conjunction with the issue of qualified immunity.  (Rec. Doc. 58, pp. 21023).  The plaintiff's argument that training and supervision was lacking is premised on his repeated assumption that the arrest for stalking was based on the plaintiff's videotaping alone.

**STATE LAW CLAIMS**

"Because Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry here is applicable to both [plaintiff's] federal and state law claims."  *O'Dwyer*, 2009 WL 412462 at *5.   Those state claims are dismissed with prejudice.   The defendants further seek dismissal of the remaining  pendant state claims. (Rec. Doc. 48, p. 24).  The plaintiff's opposition is based on the assumption that his federal claim survives summary judgment, and the argument that his claims will have prescribed.[11]  The Court declines to exercise supplemental jurisdiction over the remaining

_____

[11]      It appears from the depositions filed into the record that a related state court action was filed by the plaintiff.  Again, entry of judgment will be delayed in

state law claims.   28 U.S.C. § 1367(c)(3); *Bass v. Parkwood Hospital,* 180 F.3d 234, 246 (5th

Cir. 1999).

Accordingly,

IT IS ORDERED that the  motion for summary judgment and motion to strike

filed by Jennifer Daigle Tassin, Sheriff Irvin Fritz  Hingle, Randy Linder, Steve Lambert

and Charles Guey is GRANTED.   (Rec. Doc. 48).  Judgment will be entered on June 5,

2009.

IT IS FURTHER ORDERED that the defendants' motion to strike expert report of

W. Lloyd Grafton is GRANTED.   (Rec. Doc. 65).   The report is replete with

inadmissible legal conclusions.

New Orleans, Louisiana, this 2nd  day of June, 2009.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

order to afford the plaintiff additional time to file suit in state court, if necessary.